Thomas B. Dixon, Esq. (014395)
**DIXON LAW OFFICES, P.L.C.**
343 W. Roosevelt St., Ste. 200
Phoenix, AZ  85003
(602) 258-8400
*tom@dixonlawoffices.com*

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Patrick J. Mitchell and Christina Anctil, Arizona residents, <br><br> Plaintiffs, <br><br> v. <br><br> State Farm Fire and Casualty Company, an Illinois corporation, <br><br> Defendants. | No. <br><br> **COMPLAINT** <br><br> **(Breach of Contract; Insurance Bad Faith; Punitive Damages)** |

Patrick J. Mitchell and Christina Anctil, through their attorneys undersigned, for their Complaint against Defendant State Farm Fire and Casualty Company, hereby allege as follows:

**THE PARTIES**

1. Patrick J. Mitchell and Christina Anctil (hereinafter "Plaintiffs") are both residents of the State of Arizona who own real property in Pima County, Arizona that is the subject of this Complaint.

2. Defendant State Farm Fire and Casualty Company ("State Farm") is both incorporated in, and has its principal place of business in, the State of Illinois.

## JURISDICTION AND VENUE

3. Plaintiffs' claim for damages against State Farm total an amount that is far in excess of $75,000.

4. The Plaintiffs and Defendant State Farm are citizens of different states.

5. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b)(2), because State Farm's insurance policy was issued to the Plaintiffs in Pima County, Arizona, and the Plaintiffs' insurance loss occurred in Pima County where their home is located.

## DEMAND FOR A JURY TRIAL

7. Plaintiffs demand a trial by jury.

## GENERAL ALLEGATIONS

8. Plaintiffs are the owners of a residential home located at 989 W. Dancing Rain Court in Oro Valley, Arizona (hereinafter "the Residence").

9. In December 2020, and at all other times material hereto, the Residence was insured for property damage by a homeowners insurance policy issued by State Farm, Policy No. 03-C1-U189-8 (hereinafter the "Insurance Contract").

10. On or around December 1, 2020, there was a plumbing failure at Plaintiffs' Residence that caused extensive water damage to the Residence and personal property.

11. Plaintiffs promptly reported this loss to State Farm.

12. The extensive water damage to the Residence and personal property was obviously covered under the terms of the Insurance Contract.

13. State Farm had a duty to promptly investigate and fairly pay reasonable amounts to repair all of the water damage to the Residence and to repair or replace all of the damaged personal property.

14. State Farm's investigation of the extent of the water damage to Plaintiffs' Residence was grossly-inadequate and, as a consequence, failed to account for most of the water damage in the home including hidden water damage that had foreseeably spread through wall cavities and underneath flooring throughout the home.

15. As a result of State Farm's unfair and incomplete investigation of the loss, it prepared a repair estimate that was wholly inadequate and substantially understated the reasonable cost of repairing Plaintiffs' Residence back to its pre-loss condition.

16. Plaintiffs notified State Farm that the payment made based on State Farm's estimate was inadequate and insufficient to perform the necessary repairs to their Residence.

17. State Farm acknowledged that the Plaintiffs' home was uninhabitable as a direct result of their covered water loss and agreed to cover the Plaintiffs' additional living expenses incurred to obtain alternative housing.

18. Instead of promptly investigating, estimating and paying Plaintiffs' claim, State Farm engaged in a course of bad faith conduct that continues to this date and includes, but is not limited to:

(1) Gross delays in the evaluation and adjustment process;

(2) Misrepresentations and concealments regarding Plaintiffs' rights under their Insurance Contract;

(3) Misrepresentations and concealments regarding State Farm's duties and obligations under the Insurance Contract;

(4) A prolonged and wrongful refusal to prepare repair estimates and other damage assessments essential to the fair adjustment and payment of the claims; and

(5) A prolonged and wrongful refusal to make undisputed payments of amounts due under the Insurance Contract promptly after the losses covered under the Insurance Contract became known.

(6) A total abrogation of its claim adjusting obligations under the Personal Property coverages of the property.

19. Because State Farm refused to investigate, process and pay Plaintiffs' insurance claims fairly and in good faith, Plaintiffs were forced to retain the services of Hudson Douglas Public Adjusters, LLC to assist them in enforcing their rights under the Insurance Contract.

20. State Farm refused to cooperate with Hudson Douglas in good faith, as necessary to promptly and fairly resolve Plaintiffs' insurance claims. State Farm continued to engage in a pattern of delay and evasion of its contractual and good faith duties under the Insurance Contract as a tactic to avoid and/or delay payment of amounts clearly due and owing under the Insurance Contract.

21. On April 2, 2021, as a direct and proximate result of State Farm's bad faith throughout the course of adjusting and processing Plaintiffs' insurance claims, Plaintiffs were forced to invoke the appraisal remedy in their Insurance Contract allowing independent appraisers to determine the amount of the water loss to the Residence and personal property.

22. State Farm accepted Plaintiffs' appraisal demand.

23. On July 14, 2021, State Farm notified the Plaintiffs that State Farm had determined that they had been given adequate time to repair their home and that State Farm was retroactively terminating their Additional Living Expense ("ALE") benefits effective July 1, 2021.

24. When State Farm terminated the Plaintiffs' ALE benefits, State Farm had paid the Plaintiffs less than one-quarter of the actual cost of repairing their home as ultimately determined by the independent appraisal panel. State Farm had also failed to pay any amounts whatsoever on the Plaintiffs' personal property loss. Plaintiffs had submitted a claim for non-salvageable personal property totaling $170,148 of which State Farm had paid zero and State Farm had also paid nothing to store or clean the property that was salvageable. Consequently, when State Farm terminated ALE benefits, the Plaintiffs' home remained gutted, empty and dangerously uninhabitable as a direct consequence of State Farm's gross underpayment of their claim.

25. State Farm knew, at the time it terminated ALE benefits, that multiple courts had ruled in litigation involving State Farm that the time necessary to repair a home under the ALE coverages includes the time necessary to adjust and pay the insurance claim

including, if necessary, the time necessary to conduct an appraisal. State Farm disregarded the policy language, disregarded caselaw it was aware of and gave no consideration to the Plaintiffs' interest when it provided its notice that it was retroactively terminating ALE benefits.

26. On July 19, 2021, another court in Arizona ordered State Farm to pay ALE benefits during the time necessary to complete another ongoing appraisal in Arizona *White v. State Farm*, Gila County Sup. Ct. Case No. CV202000254. State Farm complied with the Court Order on the *White* claim, but continued to deny these Plaintiffs' ALE benefits during their appraisal.

27. On or around June 2, 2022, the appraisers set the amount of loss on Plaintiffs' insurance claim for the dwelling/structure at $235,636.22 actual cash value and replacement cost value. The Award expressly excluded the emergency remediation and mitigating services incurred in the amount of $57,754.22.

28. Throughout the entire course of State Farm's claim adjustment process, it had only paid $57,982 to repair Plaintiffs' home. Based on the appraisers' findings of fact as to the actual amount of damage to the Residence which are binding on both parties, the actual cost to repair covered water damage was more than four times greater than what State Farm paid.

29. After receiving the Appraisal Award, State Farm contacted appraisal umpire Jason Mosher *ex parte* and demanded that he provide State Farm with a copy of his digital work product. State Farm took possession of the computer files the appraisers used to prepare their agreed-upon appraisal estimate and rewrote the Appraisal Award in its

entirety, deleting many repair procedures that the appraisers deemed necessary and modifying other entries so that the estimate reflected State Farm's view of the necessary repair costs.

30. Based on the binding Appraisal Award, and the terms of the Insurance Contract, State Farm owed Plaintiffs $172,219.58 on their dwelling claim and were contractually obligated to pay that amount by no later than July 2, 2022.

31. State Farm made no payment whatsoever to the Plaintiffs by July 2, 2022.

32. On or around August 12, 2022, more than five weeks after the policy deadline, State Farm mailed the Plaintiffs a payment of $39,422.68, which was $128,022.87 less than the amount State Farm owed, not including State Farm's legal obligation to pay interest on its untimely payment.

33. Enclosed with State Farm's August 12, 2022 letter was a copy of the appraisal panel estimate that State Farm had surreptitiously altered to reflect the opinions of State Farm, and not the opinions of the "Appraisal Panel" as the document stated. State Farm's letter advised the Plaintiffs that it was computing its claim payment based on the appraisal document that State Farm had rewritten without the appraisers' knowledge or permission.

34. The appraisers also determined that the Residence was uninhabitable and awarded ALE through a date six months after the Appraisal Award is paid in full. State Farm continues to breach the ALE provisions in the Insurance Contract by refusing to offer or approve alternative housing or to pay ALE benefits to Plaintiffs.

35. For reasons unknown to the Plaintiffs, the appraisers have apparently abandoned the appraisal of their personal property loss.

36. In March 2022, appraisal umpire Jason Mosher purportedly appraised the personal property loss at $168,569.40 replacement cost value. Neither of the other appointed appraisers have agreed with that figure. Since March of 2022, Mr. Mosher has reportedly refused to respond substantively to either appraisal umpire as necessary to complete the appraisal process.

37. With the appraisal panel's apparent abandonment of the personal property appraisal, State Farm has a renewed obligation under the Insurance Contract to promptly complete a fair adjustment of the personal property loss to include payment of undisputed amounts. Plaintiffs hereby demand that State Farm promptly identify and pay the amounts of its personal property claim that State Farm has no reasonable basis for disputing.

38. State Farm's contention that it is not obligated to pay amounts awarded by the appraisal panel that are outside the scope of its own damage estimates is illogical, unfair and would render the appraisal remedy illusory and ineffective on almost every dispute over the amount of loss caused by covered events. State Farm's arguments have been repeatedly and consistently rejected by the courts and its position is not fairly debatable. Appraisers' authority to resolve disputes over the scope of damages caused by covered events is settled law and State Farm's refusal to follow the law is in bad faith.

39. State Farm's refusal to pay the amount awarded by the appraisers as required by the Insurance Contract is part of a company-wide effort to frustrate and interfere with the appraisal process and deprive its insureds of a meaningful appraisal remedy.

40. As part of its effort to deprive insureds of their appraisal remedy, State Farm routinely makes the baseless assertion that appraisers are not empowered to make determinations as to whether certain items of property were or were not damaged by the loss event that is the subject of the insurance claim.

41. State Farm knows that there is an overwhelming amount of legal authority from caselaw across the country and in Arizona recognizing that appraisers are empowered to determine whether items of property sustained damage as a result of an insured event and to determine the appropriate procedures and costs for repairing that damage. If appraisers did not have this power, the appraisal remedy would be meaningless.

42. State Farm has taken the same position that it has taken on Plaintiffs' appraisal on other insurance claims and has litigated and lost. State Farm knows that trial courts and appellate courts have regularly and routinely rejected the precise argument it is advancing to support its refusal to pay the Appraisal Award on this claim in full. There are multiple published opinions across the country where courts have concluded that State Farm's attempts to limit the appraisal remedy defy the plain language of its appraisal clause and the underlying intent of the appraisal remedy including: *Hart v. State Farm Fire and Cas. Co.*, 2021 WL 3705934 (E.D. Mich. 2021); *North Glenn Homeowners Ass'n v. State Farm,* 854 N.W. 2d 67 (Iowa App. 2014); *Smith v. State Farm Fire and Cas. Co.*, 737 F.Supp.2d 702 (E.D. Mich. 2010); *Johnson v. State Farm Lloyds,* 204 S.W.3d. 817 (Tex. App. 2006); *Shina v. State Farm*, 2022 WL 989330 (E.D. Mich March 31, 2022); *Cox v. State Farm*, 2020 WL 1888824 at *7-8 (E.D. Mich. 2020); *Laframboise v. State Farm*, 2022 WL 627147 (E.D. Mich. March 3, 2022); *State Farm v. Harper, 2022 WL*

*989088 at \*6 (*M.D. Tenn. March 31, 2022); *Ingram v. State Farm*, 2021 WL 6133771 (E.D. Tenn. Dec. 14, 2021); *Smith v. State Farm*, 2021 WL 5919025 (Dec. 15 2021); *Morrow v. State Farm*, *2022 WL 885863 (*E.D. Tenn. March 22, 2022); *State Farm v. Harper*, 2021 WL 6133774 (M. D. Tenn. Aug, 13, 2021); *Garcia v. State Farm*, 2021 WL 4439792 at \*4 (D. Colo. Sep. 27, 2021); and *State Farm v. Licea,* 685 So.2d 1285, 1288 (Fla. App. 1996).

43. On March 22, 2021, an Arizona trial court in *Nelson v. State Farm*, Maricopa County Superior Court Case No. CV2020-007110 entered Judgment against State Farm compelling State Farm to pay an Appraisal Award in full plus attorneys' fees and interest. The Judgment was entered pursuant to an order rejecting State Farm's argument that appraisers were not empowered to determine whether or not cabinets were damaged by a plumbing failure which is identical to the position State Farm is again taking on Plaintiffs' claim here. State Farm has now paid the *Nelson* Appraisal Award plus fees and costs, but is continuing to force insureds to jump through the same set of procedural hoops.

44. On September 7, 2022, a United States Magistrate Judge in the Arizona District Court in Pima County issued a 13-page Report and Recommendation that, once again, thoroughly evaluated and rejected every contrived argument State Farm raises to avoid its contractual obligation to pay appraisal awards. The Report and Recommendation in *Le v. State Farm Fire and Cas. Co.*, U.S. Dist. Ct., District of Arizona, Case No. CV 22-00044-TUC-SHR (LAB) applies Arizona law in a manner that leaves no doubt that State Farm's rewriting of the Appraisal Award on the Plaintiffs' claim was a knowing and intentional breach of the Insurance Contract.

45. Based on the overwhelming amount of legal authority available to State Farm, coupled with its own unsuccessful efforts to repeatedly re-litigate the same issue in Arizona and across the country, the law is now settled and the issue is no longer fairly-debatable. State Farm's decision to reassert a legal argument that lacks any merit under the language of the Insurance Contract or the caselaw interpreting the policy terms was made in bad faith and for the specific purpose of serving State Farm's own financial interests by depriving its insureds of contract benefits they are obviously entitled to under their insurance policies.

## COUNT ONE
**(Breach of Insurance Contract)**

46. Plaintiffs incorporate by this reference all allegations made in the previous paragraphs of this Complaint.

47. State Farm materially breached both the express and implied terms of the Insurance Contract through the conduct described in this Complaint.

48. Plaintiffs and their representatives have complied with all of their obligations and duties under the Insurance Contract and State Farm's material breaches of contract are unexcused and unjustified.

49. As a result of State Farm's material breaches of contract, Plaintiffs were forced to retain legal counsel to enforce their rights under the Insurance Contract and their rights under the Appraisal Clause and to obtain fair payment under the Insurance Contract for their insured losses. Plaintiffs' reasonable attorneys' fees incurred are, therefore, recoverable as a direct element of their contract damages.

50. Plaintiffs have been significantly damaged as a direct consequence of State Farm's breaches of the Insurance Contract as alleged herein. Their damages include the unpaid portion of the Appraisal Award, their unreimbursed Additional Living Expenses plus ALE benefits that will continue to accrue through a date six months after the Appraisal Award is finally paid, their adjuster fees, appraisal fees and expenses, their attorneys' fees, interest owed on all untimely claim payments and litigation costs. In addition to these damages, Plaintiffs have sustained, and will sustain into the indefinite future, loss of property value, loss of income and other economic damages, the full amount of which will be proven at trial.

## COUNT TWO
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

51. Plaintiffs incorporate by this reference all allegations made in the previous paragraphs of this Complaint.

52. There was no reasonable or good faith basis for State Farm's conduct throughout the processing of Plaintiffs' claims. For reasons set forth more fully in the General Allegations, State Farm treated Plaintiffs unreasonably and unfairly throughout the processing of their claims.

53. Part of State Farm's obligations and duties to Plaintiffs under the Insurance Contract included an obligation to treat Plaintiffs fairly and to evaluate and respond to their claims in good faith, giving their interests equal consideration to State Farm's own interests. State Farm breached its duty of good faith and fair dealing owed to Plaintiffs through a course of conduct that involved an improper and incomplete investigation of the

property damage; unfair manipulation, control and direction of the adjusters responsible for investigating, processing, estimating and paying the loss; and by the unreasonable and unfair manner in which State Farm processed Plaintiffs' claims and reached its decision to serve State Farm's interests, at the expense of Plaintiffs, by wrongfully delaying, underpaying and partially denying Plaintiffs' claims.

54.     State Farm's wrongful delays, underpayments and partial denials of Plaintiffs' claims was, upon information and belief, part of a program that State Farm has instituted to reduce its claim payments to insureds in Arizona, and across the nation, on all types of claims. State Farm's appraisal tactics as described in the General Allegations are part of that program. State Farm uses its claims payment reduction program as a method of increasing the profitability of the company.

55.     State Farm's claims payment reduction program operates nationwide and its practices in Arizona are consistent with a corporate-wide scheme. The scheme that State Farm employed on Plaintiffs' claims is part of a larger pattern of fraud, trickery and deceit against its own insureds.

56.     As a direct result of State Farm's bad faith conduct alleged herein, Plaintiffs have suffered emotional distress including anxiety, worry, feelings of insecurity, feelings of hopelessness, loss of the benefits and enjoyment of their Residence, loss of value to their Residence, financial hardships, additional physical damage to their Residence, impairment of their relationships with friends and family, and have also suffered other harm that is typically associated with psychological stress and trauma and has incurred other expenses, obligations and injuries causing general damages in an amount that will be shown at trial.

## COUNT THREE
### (Punitive Damages)

57. Plaintiffs incorporate by this reference all allegations made in the previous paragraphs of this Complaint.

58. The conduct of State Farm and its agents described herein was outrageous, reprehensible, and was done willfully, maliciously and deceptively with conscious disregard of Plaintiffs' rights and with the intent to harm or injure Plaintiffs, and/or with direct knowledge that harm and injuries were very likely to occur. The conduct occurred for the purpose of advancing State Farm's own pecuniary interests in total disregard of the substantial likelihood that Plaintiffs would be severely and wrongfully harmed. Accordingly, there should be an assessment of punitive damages against State Farm in an amount appropriate to punish and set an example of State Farm.

**WHEREFORE**, Plaintiffs request judgment against the defendants as follows:

A. For all economic damages incurred as a consequence of State Farm's breaches of the Insurance Contract as alleged herein;

B. For all injuries, damages and losses arising out of State Farm's bad faith in processing, evaluating and responding to Plaintiffs' insurance claims as alleged herein;

C. For punitive and exemplary damages against State Farm in an amount appropriate to punish and set an example of State Farm.

D. For prejudgment interest;

      E.      For Plaintiffs' reasonable attorneys' fees incurred in this mater under A.R.S. § 12-341.01 and/or any other applicable law;

      F.      For taxable costs incurred; and

      G.      For such other and further relief as the Court deems just and proper under the circumstances.

DATED this 14th day of October, 2022.

**DIXON LAW OFFICES, P.L.C.**

By /s/Thomas B. Dixon
    Thomas B. Dixon, Esq.
    Attorneys for Plaintiffs